IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. JAMES A. STOKES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-A-505    Monte Watkins, Judge**

---

**No. M2005-00535-CCA-R3-CD - Filed July 7, 2006**

---

Defendant was indicted for the first degree premeditated murder of Danquel R. Batey.  Following a jury trial, Defendant was found guilty of the lesser included offense of voluntary manslaughter, a Class C felony.  The trial court sentenced Defendant as a Range II, multiple offender, to ten years confinement.  In his appeal, Defendant challenges the sufficiency of the convicting evidence and the length of his sentence.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which and DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, James A. Stokes.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Katrin Miller, Assistant District Attorney General; and Christopher Buford, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Ricky Kennedy Bonner and Xavier Walters were employed on June 30, 2002, as security guards for Mr. V's Club, an after hours night club in Nashville.  Both men were stationed outside the club near the front entrance, while other security guards monitored the inside of the club.  Mr. Bonner testified that there was an altercation inside the club at some point, and people began exiting the club.  One of the internal security guards escorted a man out of the club, and two of Mr. Bonner's officers took him into custody.  A gun was later retrieved from the flowerbed near the front entrance where the man was apprehended.  Mr. Bonner said that the restrained person was not Defendant.

Mr. Bonner said that he heard a gunshot from an area near one of the club's parking lots between 3:30 a.m. and 4:00 a.m. Mr. Bonner spotted the victim, Daquel R. Batey, lying in the street about forty-five or fifty feet away from the club, bleeding from a gunshot wound. The victim was alive but unable to communicate coherently. Mr. Bonner called for police back-up and medical assistance.

Mr. Bonner and Mr. Waters testified that there were no altercations outside the club prior to the shooting. Neither Mr. Waters nor Mr. Bonner remembered seeing the victim at the club.

Mr. Waters said that he did not notice any altercation in the location where the victim was shot. The victim was not armed, and Mr. Waters did not see any weapons in the immediate vicinity. Mr. Waters saw one person running up the street after the victim was shot, but could not discern whether the individual was male or female. On cross-examination, Mr. Waters said that he could not recollect seeing Defendant at the club prior to the shooting.

Officer George Bouton with the Metro Nashville Police Department, retrieved a spent 9 mm shell casing near the victim's body and a Glock 9 mm handgun from the flowerbed near the club's front door.

Kimberly Riley testified that she had just arrived at the club when she heard a gunshot and crouched down on the ground. Ms. Riley saw a man coming toward her. The man put a gun in his pants and walked off. Ms. Riley said that no one was chasing the man. Ms. Riley was unable to identify Defendant as the person with the gun.

Lakeisa Scott testified that she knew both the victim and Defendant. Ms. Scott said that she was one of the first patrons to arrive at the club on June 30, 2002, and she parked her Yukon Denali vehicle in front of the club. After she parked, the victim approached her vehicle and asked Ms. Scott if she was going to go inside the club. Ms. Scott told the victim that she was going to sit in her vehicle, and the victim entered the club alone. Approximately thirty minutes later, the victim came outside and began walking up and down on the sidewalk in front of the club. Ms. Scott said that "there was a lot of commotion going on."

Ms. Scott said that her friend Calvin, whose nickname was "Smooth," came out of the club with a head injury. Ms. Scott called Calvin over to her vehicle and asked him what was going on. Ms. Scott said that Defendant, who appeared to be upset, ran up and told Calvin that he was going to the car to get a gun. Defendant ran down the sidewalk behind her vehicle. Ms. Scott did not see Defendant again that morning. Ms. Scott said that she heard a gunshot about ten minutes later. Ms. Scott said that she did not see the victim involved in any altercation before he was shot.

Dr. Thomas Deering, the assistant medical examiner for Davidson County, testified that the victim's cause of death was a gunshot wound to his back. The bullet fractured the victim's lumbar vertebra, hit the inferior vena cava, and perforated a portion of the intestines. The victim underwent surgery to repair his internal injuries but died from a loss of blood. Dr. Deering said that although

the victim's wounds had been cleaned in preparation for surgery, the lack of soot on the victim's shirt indicated that the shooter was at least two feet away from the victim. The victim's blood ethanol and drug screens were negative.

Detective Danny Satterfield with the Metro Nashville Police Department identified Defendant as a potential suspect after interviewing various witnesses. He and Detective Roy Dunaway interviewed Defendant in Memphis on July 9, 2002. Detective Satterfield read Defendant his *Miranda* rights, and Defendant executed a written waiver of those rights. Defendant's tape recorded statement was played to the jury.

In his statement, Defendant said that he arrived at Mr. V's Club with his friends, "Gleek" and "Smooth." Defendant said that Smooth's given name was either Chris or Calvin. Defendant said he was walking through the crowd when a man bumped into him. The man told Defendant his name was "Little Don," and he identified himself as a member of the Memphis Cryps gang. The man hit Defendant in the eye with a bottle. Defendant said that he may have hit "Little Don" back before the security guards escorted him and "Smooth" out of the club. "Little Don" and his girlfriend were standing in front of a Yukon truck when Defendant exited the club. "Gleek" retrieved his gun from his cousin's car which was parked next to the club and handed it to Defendant. Defendant said six or seven people who were with "Little Don" attacked him as Defendant walked toward "Gleek's" car which was parked at the corner where the victim was shot. Defendant said that he was scared and shot once into the crowd. Defendant and his friends jumped into "Gleek's" car and drove off. Defendant said he was wearing a multi-colored shirt and blue shorts the night of the incident.

Detective Satterfield said that Defendant's description of what he was wearing matched the description provided by other witnesses. Detective Satterfield interviewed "Gleek" but did not retrieve the murder weapon.

## II. Sufficiency of the Evidence

Defendant argues that there was insufficient evidence to identify him as the shooter who killed the victim. He contends that the only witness who could place him at the scene, Ms. Scott, testified that she saw Defendant about ten minutes before the shooting. Although she testified that she heard Defendant say he was going to retrieve a gun, no one saw Defendant with a weapon either before or after the shooting.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State*

*v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of voluntary manslaughter which is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). Moreover, a determination of whether there existed "adequate provocation" is left to the jury. See *State v. Johnson*, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995).

In his statement to the police, Defendant said that "Gleek" drove Defendant and his friends to Mr. V's Club and parked at the street corner where the victim was later found. Defendant said that the incident began with a confrontation between him and "Little Don" and that the altercation led to an exchange of blows inside the club. While none of the witnesses identified Defendant as the shooter, Defendant said in his statement that "Gleek" retrieved a gun from his cousin's car and gave the gun to Defendant. Defendant walked to the street corner where "Gleek's" car was parked, and six or seven people "jumped him." Defendant said he fired his weapon into a crowd of people at the location where the victim was subsequently found, bleeding from a gunshot wound.

In Tennessee, it is well-established that a conviction cannot be founded solely upon a defendant's confession. *State v. Smith*, 24 S.W.3d 274, 281 (Tenn.2000) (citing *Ashby v. State*, 124 Tenn. 684, 697-98, 139 S.W. 872, 875 (Tenn.1911)). Some corroborating evidence is required which, independently of the confession, tends to establish the corpus delicti of the offense charged. *Id*. However, where there is a confession, the corroborative evidence "need not be as convincing as the evidence necessary to establish a corpus delicti in the absence of any confession." *Ricketts v. State,* 241 S.W.2d 604, 606 (Tenn.1951). The corroborating evidence is sufficient to sustain a conviction if "it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration." *Id.; see also Smith*, 24 S.W.3d at 281.

Mr. Bonner corroborated Defendant's statement that there was an altercation inside the club prior to the shooting. Ms. Scott testified that "[t]here was a lot of commotion going on," and that her friend, Calvin, came of the club with an injury to his head. Ms. Scott's testimony corroborated Defendant's statement that he was at the club with a man named Calvin or "Smooth," and Ms. Scott's testimony placed Defendant at the scene immediately prior to the shooting. Ms. Scott overheard Defendant tell Calvin that he was going to retrieve a gun. Such evidence tends to connect

Defendant with the commission of the offense and is sufficient to corroborate Defendant's statement to the police.

Based on the foregoing, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Defendant knowingly killed the victim in a state of passion produced by adequate provocation. Defendant is not entitled to relief on this issue.

## III. Sentencing Issues

Defendant challenges the length of his sentence, contending that the trial court failed to consider as a mitigating factor that Defendant acted with strong provocation. When a defendant challenges the length or the manner of service of his or her sentence, this Court must conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). This presumption, however, is contingent upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the record fails to show such consideration, the review of the sentence is purely *de novo*. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determinations the trial court must consider: (1) the evidence presented at the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any appropriate enhancement and mitigating factors; (6) the defendant's potential or lack of potential for rehabilitation or treatment; and (7) any statements made by Defendant in his own behalf. T.C.A. §§ 40-35-103 and -210; *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, given due consideration and proper weight to the factors and sentencing principles, and made findings of fact adequately supported by the record, as in the case *sub judice,* this Court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing that his sentence is improper. T.C.A. § 40-35-401(d) Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Defendant does not challenge his classification as a Range II, multiple offender. As a Range II, multiple offender, Defendant is subject to a sentence of between six and ten years for his voluntary manslaughter conviction, a Class C felony. T.C.A. §§ 40-35-112(b)(3). In calculating the sentence for a Class C felony conviction, the presumptive sentence is the minimum sentence in the range if there are no enhancement or mitigating factors. *Id*. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum in that range, but still within the range. *Id*. § 40-35-201(d). Should there be enhancement and mitigating factors, the trial court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors. *Id*. § 40-35-201(e).

At the sentencing hearing, Priscilla Taylor, Defendant's mother testified that Defendant had successfully participated in a drug rehabilitation program between the time of the offense and his arrest in 2003. Ms. Taylor produced a letter from The Hands of God Recovery Ministries stating that the organization was prepared to accept Defendant into its rehabilitation program should he be placed on probation. No other evidence was presented at the sentencing hearing.

As a preliminary matter, we note that although a presentence report was prepared and considered by the trial court in determining the appropriate sentence in this case, the presentence report was not made a part of the record on appeal. It is well-settled that it is the duty of the defendant to provide a record that conveys a fair, accurate, and complete account of what transpired with regard to the issue that forms the basis of the appeal. Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). "When the record on appeal consists of less than all of the actions occurring in the trial court that were relevant to an issue raised by an appealing party, we presume that the trial court's factual findings are supported by the *full* record and are, therefore, correct." *State v. Allen Gary Lord, alias Gary Allen Lord*, No. 03C01-9312-CR-00391, 1995 WL 491015, *9 (Tenn. Crim. App., at Knoxville, Aug. 17, 1995) (emphasis in original) (citing *State v. Richardson*, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993)), *perm. to appeal denied* (Tenn. Dec. 28, 1995).

The State's notice of enhanced punishment includes three prior convictions: unlawful possession of less than 0.5 grams of cocaine, a Class C felony, in 1994; unlawful possession of a weapon after conviction of a felony drug offense, a Class E felony in 1997; and reckless endangerment with a deadly weapon, a Class E felony, in 1997. The transcript of the sentencing hearing reflects that Defendant acknowledged these prior convictions, and argued only that his weapons conviction and his reckless endangerment conviction should be considered collectively under the range enhancement provision dealing with offenses committed within twenty-four hours of each other as part of a single course of action. *See* T.C.A. § 40-35-106(b)(4). However, this argument by Defendant is waived because of the failure to include the presentence report in the record on appeal. *See* Tenn. R. App. P. 24(b).

The sentencing hearing was held prior to the filing of *State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005). Erroneously relying on *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), *see Gomez*, 163 S.W.3d at 661, the trial court limited its considerations to the number and nature of Defendant's prior criminal history as an enhancement factor. *See* T.C.A. § 40-35-114(2). The trial court also considered the nature and circumstances of the offense and the general principles of sentencing. *See id.* § 40-35-210(b)(4). The trial court considered, but rejected, Defendant's contention that the fact that he acted with "adequate provocation" should be considered as a mitigating factor in determining the length of his sentence. The trial court specifically considered the fact that Defendant used a gun to shoot the victim even though he had been previously convicted of a weapons possession offense. *See id.* § 40-35-114(10). Accordingly, the trial court sentenced Defendant to ten years, or the maximum sentence for a Range II, multiple offender, convicted of a Class C felony.

Defendant argues that because the jury found that he acted with provocation when he shot the victim, the trial court erred in not considering this factor in mitigation of the length of his sentence. *See* T.C.A. § 40-35-113(2) (the defendant acted under strong provocation). A conviction of voluntary manslaughter only requires a finding of adequate provocation, while statutory mitigating factor (2) requires a finding of strong provocation. *See id.* §§ 39-13-211(a); 40-35-113(2). There is no prohibition, however, against a trial court's giving a defendant "double credit," and a trial court should consider whether this factor is applicable under the circumstances of the case. *State v. Michael R. Blakely, Jr.*, No. M2001-01114-CCA-R3-CD, 2003 WL 213780, *14 (Tenn. Crim. App., at Nashville, Jan. 31, 2003), *no perm. to appeal filed.*

After considering the testimony at trial and the pre-sentence report, the trial court declined to consider this factor in mitigation of the length of Defendant's sentence. We conclude that the evidence does not preponderate against the trial court's finding that mitigating factor (2) is not applicable. Defendant is not entitled to relief on this issue.

The trial court enhanced Defendant's sentence based on its finding that Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Defendant does not dispute that he has three prior felony convictions, one conviction more than those necessary to classify him as a Range II, multiple offender. *See* T.C.A. § 40-35-106(a)(1). The State argues that the trial court's reliance on *Blakely* was misplaced, and, in addition to Defendant's prior convictions, the length of his sentence may also be enhanced because Defendant did not contest the fact that he used a gun to commit the offense. *See id.* § 40-35-114(10).

In *Gomez*, our Supreme Court concluded that Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the *Blakely* holding. *Gomez*, 163 S.W.3d at 661. "The Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." *Id.* Nonetheless, even without a finding that other enhancement factors are applicable, upon the finding of one enhancement factor, "the statute affords to the judge discretion to choose an appropriate sentence anywhere within the statutory range." *Id.* at 659.

Based on the foregoing, we conclude that the trial court did not err in sentencing Defendant to ten years for his voluntary manslaughter conviction.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

---

THOMAS T. WOODALL, JUDGE